UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CEDRICK T. MAXWELL, SR., | : | Case No. 3:18-cv-404 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

## I. Introduction

Plaintiff Cedrick T. Maxwell, Sr., brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. He applied for benefits on September 8, 2015, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since April 27, 2013. He was fifty-three years old at that time and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d). He has a limited education. *See id* §§ 404.1564(b)(3), 416.964(b)(3).[1]

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 60-75), Plaintiff's Statement of Errors (Doc. #7), Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).  Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …."  *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

3

follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since April 27, 2013.

Step 2: He has the severe impairments of degenerative joint disease of his bilateral knees, diabetes mellitus, depression, anxiety, and post-traumatic stress disorder.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "medium work … except he is limited to occasional crouching, crawling, and kneeling, frequent stooping and climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds. The claimant is limited to no work around hazards such as unprotected heights, or dangerous machinery. He is limited to performing unskilled, simple, repetitive tasks with no fast-paced production work or strict production quotas. The claimant is further limited to occasional contact with coworkers, supervisors, and the public, and jobs that involve very little, if any, changes in job duties or work routine from one day to the next."

Step 4: He is unable to perform any of his past relevant work.

4

> Step 5:   He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 60-75). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 75.

## V. <u>Discussion</u>

Plaintiff contends that the ALJ reversibly erred in evaluating the opinion of consultative examiner Damian M. Danopulos, M.D.

Dr. Danopulos examined Plaintiff on November 12, 2015. Plaintiff reported that he had suffered from bilateral knee pain for at least the last ten or twenty years. (Doc. #6, *PageID* #552). He saw a physician four or five years ago who took x-rays and said he needed surgery on his right knee. *Id.* Plaintiff never had surgery. *Id.* Upon examination, Dr. Danopulos noted that Plaintiff's knees revealed normal but painful motions. *Id.* at 551. X-rays of Plaintiff's right knee revealed "mild to moderate tricompartmental osteoarthrosis most pronounced at the patellofemoral compartment." *Id.* at 555. X-rays of Plaintiff's left knee showed mild tricompartmental joint space narrowing; significant enthesopathy of the patella; and prominent tibial apophysis. *Id.* at 552, 556. The radiologist assessed, "[o]steoarthritis stable when compared to the prior examination." *Id.* at 556. Dr. Danopulos observed that Plaintiff moved freely in the examination room and could dress and undress normally. *Id.* at 551. He had a normal gait without ambulatory aids. *Id.* at 552. Toe and heel gait were normal. *Id.* Squatting and arising from squatting were normal. *Id.* He could get on and off the examination table without difficulty. *Id.* Dr. Danopulos assessed mild arthritic changes in Plaintiff's

5

left knee and mild-to-moderate arthritic changes in his right knee. *Id.* at 553. He opined that Plaintiff "may do any mild or semi sedentary jobs easily, if he may be able to concentrate and take his life more seriously." *Id.* at 554.

Social Security Regulations recognize several different categories of medical sources: treating physicians, nontreating yet examining physicians, and nontreating yet record-reviewing physicians. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."

*Id.* (quoting Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996); citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1)-(2)). Regardless of the source, the Regulations require an ALJ to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), (c). "The source of the opinion therefore dictates the process by which the Commissioner accords it weight." *Gayheart*, 710 F.3d at 376.

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). If the treating

6

physician opinion is not given controlling weight, then the opinion must be weighed under the following factors: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. § 404.1527(c). Opinions from nontreating and nonexamining sources are never assessed for "controlling weight." Instead, they are weighed under the factors listed above. *Id.*

In the present case, ALJ Kenyon assigned Dr. Danopulos' opinions "little weight." (Doc. #6, *PageID* #s 71-72). He first addressed the x-rays of Plaintiff's knees. He noted that, in connection with a previous application for benefits, Administrative Law Judge Elizabeth A. Motta found Plaintiff can perform medium work. *Id.* at 71-72, 109-18. And, ALJ Kenyon found that "the stable imaging studies in [Plaintiff's] worse knee does not support reducing his exertion level to mild or semi sedentary as suggested by Dr. Danopulos." *Id.* at 72. He concluded, "The level of degenerative changes shown on the x-rays are consistent with the normal aging process, and there is no evidence of significant knee joint instability that would compromise his ability to perform medium level work." *Id.*

Plaintiff takes issue with the ALJ's assessment of the x-rays, asserting that the ALJ improperly disagreed with Dr. Danopulos' interpretation of the x-rays. Plaintiff argues that the ALJ is not qualified to find that the degenerative changes shown on the x-rays are "consistent with the normal aging process" because no medical source interpreted the x-rays with that rationale.

Regardless of whether the degenerative changes in Plaintiff's knees are consistent with the normal aging process, substantial evidence supports the ALJ's conclusion that

the imaging studies were stable. For instance, in 2015, the radiologist found that the osteoarthritis in Plaintiff's left knee was "stable when compared to the prior examination." *Id.* at 556. Likewise, the record-reviewing physicians noted that the right knee x-rays were unchanged when compared to the September 2012 x-rays. *Id.* at 139. The left knee x-rays were also stable when compared to the March 2013 x-rays. *Id.* Furthermore, the record-reviewing physicians also found that Dr. Danopulos' opinion was not supported by the x-rays. *Id.* at 137.

The ALJ gave additional reasons for assigning "little weight" to Dr. Danopulos' opinion. He found that Dr. Danopulos' opinion was inconsistent with his own observations. Specifically, the ALJ reasonably determined that Dr. Danopulos' opinion that Plaintiff may be able to do any mild or semi-sedentary job stands in sharp contrast to his observations that Plaintiff had normal range of motion in both knees (albeit painful); normal gait, muscle strength, and sensation; and the ability to squat and arise from squatting normally. *Id.* at 72 (citation omitted). The record-reviewing physicians agreed—opining that his opinion was not supported by his exam. *Id.* at 137, 170.

The ALJ likewise reasonably discounted Dr. Danopulos' opinion because Plaintiff has not received any significant treatment for his knee. *Id.* at 72. Plaintiff testified that he treats his knee pain with aspirin, ibuprofen, heat, and ice. *Id.* at 72, 99; *see Bolton v. Comm'r of Soc. Sec.*, 730 F. App'x 334, 338 (6th Cir. 2018) ("And the ALJ reasonably discounted the opinion of Dr. Ganshirt because it was based on a single evaluation, and the extreme severity of the proposed limitations was not supported by the medical evidence in the record, which generally showed that Bolton received conservative

8

mental-health treatment ...."); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729-30 (6th Cir. 2013) ("The ALJ correctly recognized that Dr. Butler's opinion that Rudd could not perform sedentary work conflicted with Rudd's sparse treatment, Rudd's x-rays, and use of over-the-counter medication.").

Turning to Plaintiff's next argument, he asserts that the ALJ erred by applying more rigorous scrutiny to Dr. Danopulos' opinion than to the opinions of the record-reviewing physicians. (Doc. #7, *PageID* #902). Plaintiff points out that Dr. Danopulos—unlike the record-reviewing physicians—examined him and observed that both knees revealed painful motions. *Id.* at 902-03. He also reviewed the knee x-rays. Further, Plaintiff contends that the Dr. Danopulos' opinion is consistent with subsequent physical exams. *Id.* at 903.

The ALJ gave "substantial weight" to the opinions of record-reviewing physicians, Rannie Amiri, M.D., and William Bolz, M.D. (Doc. #6, *PageID* #71). The ALJ began his evaluation by comparing their opinions to the previous ALJ's residual functional capacity assessment. He noted that although Dr. Amiri and Dr. Bolz did not adopt ALJ Motta's physical residual functional capacity, their assessments are very similar to hers. *Id.* (citations omitted); *see also id.* at 114, 137-39, 170-72. However, unlike ALJ Motta, Dr. Amiri and Dr. Bolz opined that Plaintiff did not have any balance limitations—an opinion that ALJ Kenyon adopted. *Id.* at 71, 114, 138, 171.

The ALJ explained that he gave substantial weight to Dr. Amiri and Dr. Bolz's opinions because they "are generally consistent with the record." *Id.* at 71. Notably, Plaintiff had good functioning on his physical examination, x-rays of his knees revealed

mild to moderate findings, and he had no significant treatment for his knee pain. *Id.* (citation omitted). However, although Dr. Amiri and Dr. Bolz opined Plaintiff could occasionally climb ladders, ropes, and scaffolds, the ALJ—giving Plaintiff "full benefit of the doubt"—determined that he should never climb ladders, ropes, and scaffolds. *Id.*

While the opinions of nontreating sources are generally assigned more weight than nonexamining sources, "it is not a *per se* error of law … for the ALJ to credit a nonexamining source over a nontreating source. Any record opinion … may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1527, 416.927; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010)). In the present case, the ALJ reasonably credited Dr. Amiri and Dr. Bolz's opinions over Dr. Danopulos' opinion because their opinions are "generally consistent with the record, which demonstrates good functioning on his physical examination, only mild to moderate findings on the x-rays of his knees, and no significant treatment for his knee pain." (Doc. #6, *PageID* #71) (citation omitted). Accordingly, Plaintiff's argument lacks merit.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

Date: March 6, 2020  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge